FRED W. GRABS *et al.*, Plaintiffs-Appellees, v. SAFEWAY, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—08—3007

Opinion filed September 30, 2009.

Vedder Price P.C., of Chicago (Thomas M. Wilde and Patrick W. Spangler, of counsel), for appellants.

Rittenberg, Buffen & Gulbrandsen, of Chicago (Ivan M. Rittenberg and Steven R. Saks, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

Plaintiffs filed a joint complaint against their former employer, defendant Dominick's Finer Foods, LLC, and its parent company, Safeway, Inc. (collectively Dominick's or defendants), alleging their discharge was in retaliation for filing claims pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2006)). Dominick's maintained that it terminated plaintiffs' employment pursuant to its neutrally applied attendance policy after Dominick's obtained an opinion from an independent medical examiner (IME) that plaintiffs could return to work without restrictions and plaintiffs failed to come to work or call in their absences for three days in a row. The circuit court denied plaintiffs' motion for summary judgment on their claims, but subsequently granted plaintiffs' motion to reconsider and entered summary judgment in favor of plaintiffs. The circuit court then granted defendants' motion for interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). On October 21, 2008, the circuit court certified the following question for interlocutory appeal:

"Does the Workers' Compensation Act give the Illinois Workers Compensation Commission the exclusive authority to determine whether an injured employee may return to work, such that when an employer is faced with conflicting medical opinions from the employee's doctor and the employer's IME, the employer may not rely upon the IME opinion to terminate the employee under the employer's attendance policy for failing to return to work, before

the Commission has adjudicated the pending dispute over the conflicting medical opinions?"

Defendants timely filed an application for leave to appeal on November 3, 2008, and this court allowed the application on November 26, 2008.

For the following reasons, we find that when an employer is faced with conflicting medical opinions from the employee's doctor and the employer's IME, an employer may not rely solely on an IME in terminating an employee for failing to return to work or for failing to call in his absences. We decline to find that a *per se* standard exists to recover for a workers' compensation retaliatory discharge claim; rather, an employee must meet his burden of proof to show that his discharge was causally related to the exercise of his rights under the Act.

## I. BACKGROUND

Plaintiffs were both employed by defendants and worked at a Dominick's store in Cook County, Illinois. On March 4, 2005, Grabs was injured while at work at Dominick's and Grabs filed a workers' compensation claim on that date. Dominick's initially approved the claim and paid Grabs' medical bills and temporary total disability benefits. On March 16, 2006, Grabs' physician, Dr. Sweeney, recommended that Grabs remain off work. On March 25, 2006, Grabs visited Dr. Bernstein, an IME, and Dr. Bernstein determined that Grabs' injury was not work related and that he could return to work with no restrictions. Grabs decided to follow his physician's advice, Dr. Sweeney, and remained off work.

Francek alleged that he suffered work injuries on May 28, 2005, and January 9, 2006. Francek filed four workers' compensation claims, the last two of which he alleged led to his discharge. Dominick's denied these last two claims and requested that Francek submit to an independent medical examination, which was performed by Dr. Papierski. Dr. Papierski determined that the injury was not work related and released Francek to work immediately with no restrictions. Around this same time, Francek was also examined by his personal physician, Dr. Bartucci, who recommended that Francek remain off work. Francek followed the advice of Dr. Bartucci and remained off work.

Dominick's had a no-fault attendance policy, in which an employee may be terminated for job abandonment if he does not come in to work or call in his absences for three days in a row (*i.e.*, attendance coding "Code 10-No Call/No-Show"). Following the opinions of the IMEs, Dominick's changed plaintiffs' attendance coding from work related injury, which did not require them to call in their absences, to

require plaintiffs to return to work or call in their absences. On June 14, 2006, when Grabs did not return to work or call in his absence, Dominick's no-fault attendance policy began running. When Grabs did not report to the office or call in his absences on June 15 or 16, Dominick's terminated his employment in accordance with its attendance policy. Similarly, on June 19, 2006, when Francek failed to return to work or call in his absence, Dominick's began the tolling of its attendance policy. After Francek failed to come in to work or call in his absences on June 20 and 21, Dominick's terminated his employment.

Plaintiffs filed claims against defendants alleging retaliatory discharge. On May 2, 2008, the circuit court denied plaintiffs' motions for summary judgment on their claims and granted defendants' motion for severance of the trials.

On July 7, 2008, the Illinois Workers' Compensation Commission (Commission) issued its final decisions with respect to plaintiffs' petitions for an emergency hearing by an arbitrator, filed pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2006)), to resolve the dispute whether plaintiffs were capable of returning to work. In its decision, the Commission adopted the findings of the arbitrator of the Commission. The arbitrator accepted the findings of plaintiffs' personal physicians, Drs. Sweeney and Bartucci, and found defendants' IMEs unpersuasive. The arbitrator determined that plaintiffs' injuries were caused by accidents that arose out of and in the course of their employment with defendants. Specifically, Grabs was injured on March 4, 2005, as he was twisting and moving a 10-pound box. Francek was injured on January 9, 2006, as he was moving boxes above shoulder height. The arbitrator noted that at the time of its decision, plaintiffs were both being treated by their physicians, who had not released plaintiffs to work. Accordingly, the arbitrator found that plaintiffs were exercising their rights, pursuant to section 8(a) of the Act (820 ILCS 305/8(a) (West 2006)), to follow their physicians' advice and not return to full-duty work. The arbitrator stated that, pursuant to section 8(a), plaintiffs could ignore an IME recommendation that contradicted their treating physicians' advice. The arbitrator also found that, pursuant to sections 18 and 19 of the Act (820 ILCS 305/18, 19 (West 2006)), the resolution of the medical dispute over whether plaintiffs could return to work was for the Commission to resolve. At the time defendants terminated plaintiffs' employment, plaintiffs had pending petitions for an immediate hearing on the issue of whether each was capable of returning to work, pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2006)). The arbitrator also determined that the IME opinions, used by defendants to change

plaintiffs' attendance coding to require them to return to work or call in their absences, were created as part of defendants' workers' compensation defense to plaintiffs' claims for temporary total weekly compensation and medical care prescribed by their physicians. The arbitrator concluded that defendants were obligated to pay plaintiffs for temporary total disability benefits and medical services and prospective medical care.

On September 19, 2008, in an eight-page written order, the circuit court granted plaintiffs' motion to reconsider, in part, and granted plaintiffs' motion for summary judgment on the issue of liability. The circuit court denied plaintiffs' motion to reconsider its ruling granting defendants' motion for separate trials on damages. In its order, the circuit court found that plaintiffs had a right to follow their treating doctors' advice and not return to work until the Commission resolved the conflicting medical opinions. The circuit court noted that while plaintiffs had a petition pending before the Commission to determine the issue of whether plaintiffs were capable of returning to work, defendants used the IME reports to change plaintiffs' attendance coding to "Code 10-No Call/No-Show." While plaintiffs had no previous duty to call in absences, the new coding required plaintiffs to do so. After Grabs and Francek failed to call in three days in a row, defendants terminated them pursuant to Dominick's attendance policy. The circuit court found that the fact that the attendance policy was "neutral," in that it was applied in the same manner to all employees did not shield defendants under the "nonpretextual" exception to plaintiffs' retaliatory discharge claim where the application of the policy was improper and in violation of the Act. The circuit court concluded that because the change in coding was in response to the IME reports, which were disputed by plaintiffs' treating physicians and should have been resolved by the Commission prior to any action by defendants, plaintiffs' discharge was directly and proximately related to their claims for benefits under the Act, and summary judgment in their favor was proper. In reaching its determination, the circuit court relied on this court's decision in *Clark v. Owens-Brockway Glass Container, Inc.*, 297 Ill. App. 3d 694 (1998). All parties on appeal assert that the circuit court applied essentially a *per se* standard to find that plaintiffs' discharge was causally related to the improper denial of their right to follow their treating physicians' orders while their claims were pending before the Commission. On October 21, 2008, the circuit court granted defendants' motion for interlocutory appeal and certified the above question.

## II. ANALYSIS

The general rule in Illinois is that an at-will employee may be discharged by the employer at any time and for any reason.[1] *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 17-18 (1998). However, our supreme court recognized a limited exception to this rule in *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172 (1978), when it determined that a plaintiff who was terminated for pursuing workers' compensation benefits could bring an action for retaliatory discharge against the former employer. After examining the history of the Act, our supreme court held that a cause of action based on the tort of retaliatory discharge was necessary to insure that the public policy underlying the enactment of the Act was not frustrated. *Kelsay*, 74 Ill. 2d at 182-85. Discharges are considered retaliatory when they violate a "clear mandate of public policy," and an employer "may not present the employee with a choice between his job and his legal entitlement to compensation" under the Act. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160, 166 (1992).

The Act specifically provides that "[i]t shall be unlawful for any employer *** to discharge *** an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h) (West 2006); *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 119 (2008). Therefore, as our supreme court has explained, "section 4(h) plainly prohibits a retaliatory discharge for the exercise of workers' compensation rights." *Smith*, 231 Ill. 2d at 119.

To state a cause of action for retaliatory discharge, plaintiffs must show that: (1) they were employees of defendants before or at the time of the injury; (2) they exercised some right granted by the Act (820 ILCS 305/1 *et seq.* (West 2006)); and (3) their discharge was causally related to the exercise of their rights under the Act. *Clark*, 297 Ill. App. 3d at 697. The element of causation is not met if the employer has a valid, nonpretextual basis for discharging the employee. *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 160 (1992).

In the present case, both parties agree that Grabs and Francek were employees of Dominick's at the time of their injuries and that they exercised their rights to benefits under the Act. Therefore, the sole issue before the circuit court was whether plaintiffs' discharge was causally related to the exercise of their rights under the Act. In its September 19, 2008, order, the circuit court determined that, as a matter of law, plaintiffs' discharge was causally related to the improper denial of their right to follow their treating physicians' orders while their claims were pending before the Commission.

---

[1]While plaintiffs were union members, the union contract was not involved in this case.

On appeal, defendants contend that the circuit court improperly entered summary judgment in plaintiffs' favor because causation is a material fact for a jury and that this court should answer the certified question in the negative. Plaintiffs maintain that this court should answer the certified question in the affirmative based on the reasoning set forth by the Fifth District of this court in *Clark*, 297 Ill. App. 3d 694, and *Hollowell v. Wilder Corp. of Delaware*, 318 Ill. App. 3d 984 (2001).

In *Clark*, an employee injured her back at work and the employer began paying temporary total disability payments to the employee while she was off work and participating in a physical therapy/work-hardening program as prescribed by her physician. *Clark*, 297 Ill. App. 3d at 696. The employer believed that the employee was malingering and receiving unwarranted workers' compensation benefits, so the employer hired a private investigator to monitor her. After the employer reviewed the private investigator's videotaped surveillance of the employee mowing her lawn, the employer fired the employee for fraudulent misrepresentation and conduct in connection with her claims for workers' compensation. *Clark*, 297 Ill. App. 3d at 696. The employee brought an action to recover damages for retaliatory discharge. The Fifth District of this court affirmed the circuit court's grant of summary judgment in the employee's favor and the jury's award of more that $150,000 in damages.

In affirming the grant of summary judgment, the *Clark* court did not establish a *per se* rule to recover for retaliatory discharge. Rather, the court explained that a claimant must show, *inter alia*, that "his or her discharge was causally related to the exercise of rights under the Act." *Clark*, 297 Ill. App. 3d at 697. In *Clark*, the employer admitted that the employee's discharge was connected to her workers' compensation claim because the employer thought that the employee was malingering and collecting benefits to which she was not entitled. *Clark*, 297 Ill. App. 3d at 698. As a result, the *Clark* court held that the entry of summary judgment in favor of the employee was proper because her discharge was directly and proximately related to her claim for benefits. *Clark*, 297 Ill. App. 3d at 698. In discussing the entry of summary judgment in that case, the *Clark* court stated, "We wish to be clear on this point. An employer may not discharge an employee on the basis of a dispute about the extent or duration of a compensable injury. An employer that fails to heed this rule subjects itself to a retaliatory discharge action under *Kelsay*." *Clark*, 297 Ill. App. 3d at 699. However, the *Clark* court noted: "This does not mean that an employer may never discharge an employee who has filed for benefits under the Act. An employer may discharge an injured

employee who has filed a workers' compensation claim as long as the reason for the discharge is wholly unrelated to the employee's claim for benefits under the Workers' Compensation Act." *Clark*, 297 Ill. App. 3d at 698.

In *Hollowell*, the plaintiff filed a complaint against his former employer alleging that his discharge was in retaliation to his filing a workers' compensation claim. The employee was employed as a farm laborer and injured his back while riding a tractor over a ditch in the fields. The employee was subsequently ordered by his physician not to return to work until he completed a physical therapy/work-hardening program. *Hollowell*, 318 Ill. App. 3d at 986. The employee filed a workers' compensation action and the employer's workers' compensation carrier requested that the employee receive an independent medical examination. The IME concluded that the employee's tractor accident aggravated a preexisting condition and that the employee could return to work immediately. *Hollowell*, 318 Ill. App. 3d at 986. The employee's manager visited the employee's residence and informed him that he was required to return to work immediately or face the consequence of being fired. The employee stated that he could not return under his physician's orders to finish the physical therapy program before returning to work. The employee was then fired. *Hollowell*, 318 Ill. App. 3d at 986. Following a trial, the jury rendered judgment in favor of the employee, which included an award of $50,000 in punitive damages. *Hollowell*, 318 Ill. App. 3d at 990.

On review, the Fifth District of this court affirmed the jury's award of punitive damages against the employer. *Hollowell*, 318 Ill. App. 3d at 989. The *Hollowell* court determined that punitive damages were warranted based on the facts of that case, where the employee presented evidence that his manager harassed and verbally abused him, and pressured the employee to violate his physician-ordered work restrictions. *Hollowell*, 318 Ill. App. 3d at 989. The *Hollowell* court explained that "[a]n employer cannot unilaterally rely on one physician's favorable diagnosis while at the same time dismissing another physician's unfavorable diagnosis. To do so would give an employer the ability to rely on its own medical evaluation as a reason to demand that employees return to work, even when that evaluation conflicts with that of the employee's physician." *Hollowell*, 318 Ill. App. 3d at 988-89.

After relying on its reasoning in *Clark*, the *Hollowell* court stressed that it was not saying, and did not say in *Clark*, that a fraudulent workers' compensation claim is not a justification for termination. "However, when there is a dispute between an independent medical examiner and an employee's physician with no evidence of fraud, the

employer cannot discharge the employee on the basis of suspected laziness or malingering. It is for the Industrial Commission to settle disputes such as this where there are conflicting medical opinions." *Hollowell*, 318 Ill. App. 3d at 989. Accordingly, the Fifth District of this court determined that, where there is a dispute between an IME and an employee's physician, the employer cannot rely solely on the IME to discharge an employee. However, the *Hollowell* court did not establish a *per se* rule but, rather, determined that the evidence supported the jury's punitive damages award in that case. *Hollowell*, 318 Ill. App. 3d at 989.

Plaintiffs also rely on our supreme court's opinion in *Smith*, 231 Ill. 2d 111, in support of a *per se* rule of retaliatory discharge. In *Smith*, our supreme court explained that "section 4(h) [of the Act] plainly prohibits a retaliatory discharge for the exercise of workers' compensation rights." *Smith*, 231 Ill. 2d at 119; 820 ILCS 305/4(h) (West 2006). However, other than stating the general law with respect to retaliatory discharge, our supreme court's holding in *Smith* is inapplicable. In *Smith*, our supreme court determined that the defendant park district was not immune under the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/2—109 (West 2002)) against claims of retaliatory discharge for exercising workers' compensation rights. *Smith*, 231 Ill. 2d at 119. Our supreme court's decision in *Smith* does not support establishing a *per se* retaliatory discharge rule. Rather, our supreme court analyzed the disputed facts and determined that the dismissal of the plaintiff's retaliatory discharge claim, pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)), was improper in that case. *Smith*, 231 Ill. 2d at 121.

In the instant case, both Grabs and Francek presented orders from their treating physicians which conflicted with the IME determinations that they could return to work. At the time of their discharge, Grabs and Francek also had pending petitions, pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2006)), for an immediate hearing before an arbitrator to resolve the dispute between plaintiffs' physicians and the IME regarding whether each was capable of returning to work. Defendants admit that they relied on the IME opinions to change plaintiffs' attendance coding and require that plaintiffs come to work or call in absences.[2]

---

[2]Defendants also admitted that they did not communicate this change in policy requiring plaintiffs to call in absences to either of the plaintiffs; rather, they notified plaintiffs' union.

In a petition for rehearing, plaintiffs argued that the defendants' admission that they relied on the IME opinions to change plaintiffs' attendance coding to require that plaintiffs come to work or call in their absences, amounts to a concession that defendants' reliance on the IME opinions constituted a proximate cause of plaintiffs' discharge. Citing *Nolan v. Weil-McLain*, 233 Ill. 2d 416 (2009), plaintiffs argue that the undisputed facts in the present case constitute proximate cause under either the "but for" standard or the "substantial cause" standard: " 'But for' Safeway's illegal use of its IME opinions to change the plaintiffs' attendance status from 'work related absences' to 'personal absences' under Safeway's attendance policy, plaintiffs would not have been fired. The facts also meet the 'substantial cause' standard: Safeway's admitted illegal use of the IME opinions was a 'substantial cause' for the firing."

In their answer to the petition for rehearing, defendants responded, "Under the Pattern Jury Instruction, plaintiffs must prove they were discharged 'because of' the exercise of their rights under the Act. IPI 250.02 (West 2009). They must also prove that their exercise of rights was 'a proximate cause' " of their termination.

Consistent with our answer to the certified question, in order to recover for workers' compensation retaliatory discharge, plaintiffs were required to show that defendants relied on the IME opinions in discharging plaintiffs, such that the termination was causally related to their exercising a right or remedy granted to them by the Act. 820 ILCS 305/4(b), 8(a) (West 2006). Consequently, if the change of plaintiffs' attendance coding was made based solely on the IME opinions, and defendants terminated plaintiffs for failing to return to work or for failing to call in their absences, entry of summary judgment for plaintiffs would be appropriate. We do not decide this issue as this case is before us pursuant to Supreme Court Rule 308. See *Brookbank v. Olson*, 389 Ill. App. 3d 683, 685 (2009) (this court's review is generally limited to the question certified by the trial court). We note that the petition for rehearing and answer focused almost entirely on the issue of proximate cause—an issue which was only briefly discussed in the parties' initial briefs.

Defendants rely upon our supreme court's decision in *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142 (1992), in support of their contention that defendants had the right to discharge plaintiffs for failing to return to work. In *Hartlein*, our supreme court stated that "Illinois law does not obligate an employer to retain an at-will employee who is medically unable to return to his assigned position" and "[A]n employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury." *Hartlein*, 151 Ill. 2d

at 160. In *Hartlein*, our supreme court explained that a valid claim of retaliatory discharge requires, *inter alia*, a showing that an employee has been discharged in retaliation for the employee's activities. *Hartlein*, 151 Ill. 2d at 160. Our supreme court also noted that "[t]he element of causation is not met if the employer has a valid basis, which is not pretextual, for discharging the employee." *Hartlein*, 151 Ill. 2d at 160. With respect to the element of causation, "the ultimate issue to be decided is the employer's motive in discharging the employee." *Hartlein*, 151 Ill. 2d at 163.

In *Hartlein*, it was undisputed that the employee's work-related injury prevented him from ever returning to his former position within the company and the company had no available positions which the employee was capable of performing. *Hartlein*, 151 Ill. 2d at 163-64. Our supreme court held that no improper motive on the employer's part was shown and, therefore, the evidence did not reveal that the employee was retaliatorily discharged. *Hartlein*, 151 Ill. 2d at 166-67. As a result, the *Hartlein* court concluded that the grant of a preliminary injunction was improper in that case. *Hartlein*, 151 Ill. 2d at 167.

Here, by contrast, the issue of whether plaintiffs were capable of returning to work was disputed. Unlike the situation in *Hartlein*, defendants in this case did not have the right to terminate plaintiffs for failing to return to work or for failing to call in their absences based solely on the IME determinations that plaintiffs were capable of returning to work where the IME opinions were disputed by plaintiffs' physicians. Rather, due to the conflicting medical evidence in this case, the determination regarding plaintiffs' ability to return to work could only have been made by the Commission. 820 ILCS 305/18 (West 2006) ("All questions arising under this Act, if not settled by agreement of the parties interested therein, shall, except otherwise provided, be determined by the Commission"); see also *Hollowell*, 318 Ill. App. 3d at 988-89 (the Commission is to settle disputes where there are conflicting medical opinions). However, plaintiffs were still obligated to establish the element of causation in support of their retaliatory discharge claims. *Hartlein*, 151 Ill. 2d at 163. If defendants had a valid basis, which was not pretextual, for discharging plaintiffs, then the element of causation is not met. *Hartlein*, 151 Ill. 2d at 160. However, if the plaintiffs can show that they were discharged in retaliation for exercising their rights under the Act, then plaintiffs can establish a claim for retaliatory discharge and the grant of summary judgment may be appropriate.

In *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328 (1998), our supreme court, interpreting *Hartlein*, explained that in retaliatory

discharge cases, an employer is not required to come forward with an explanation for an employee's discharge, and "it remains plaintiff's burden to prove the elements of the cause of action." *Clemons*, 184 Ill. 2d at 336. However, "if an employer chooses to come forward with a valid, nonpretextual basis for discharging its employees and the trier of fact believes it, the causation element required to be proven is not met." *Clemons*, 184 Ill. 2d at 336.

In *Clemons*, the employer chose to assert a defense to the employee's cause of action for retaliatory discharge. The employer maintained that the employee was discharged, not in retaliation for filing a workers' compensation claim, but because of a dispute over the payment of his wages. The employee argued that the employer's stated reason for the discharge was a violation of the Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 1994)) and that an employer may not contest the causation element of the tort of retaliatory discharge by proffering an illegal defense. *Clemons*, 184 Ill. 2d at 336. In rejecting the employee's argument, our supreme court explained:

> "The burden remains on the plaintiff to establish the elements of his cause of action, which here involved the discrete claim that the defendant wrongfully discharged plaintiff in retaliation for seeking recovery under the Workers' Compensation Act. If the trier of fact rejects plaintiff's evidence, or instead accepts defendant's proffered reason for the termination, then plaintiff has failed to meet his burden of proof. In any event, we do not believe that a defendant is limited in the defense it may offer to a plaintiff's claim of retaliatory discharge, or that the allegedly illegal nature of its defense somehow relieves plaintiff of his burden of establishing the elements of his cause of action. Other remedies may exist for the other violation, but the burden still rests on plaintiff to prove the elements of the action he has pleaded." *Clemons*, 184 Ill. 2d at 336-37.

Our supreme court further stated that cases brought for retaliatory discharge predicated on an employee's filing of a worker's compensation claim are reviewed using traditional tort analysis. *Clemons*, 184 Ill. 2d at 339. Accordingly, our supreme court has made clear that a plaintiff bears the burden of establishing the elements of his cause of action for retaliatory discharge, including the element of causation. We therefore find no reason to create a *per se* rule of retaliatory discharge in this case.

Defendants also rely on the Second District of this court's determination in *Paz v. Commonwealth Edison*, 314 Ill. App. 3d 591 (2000), to support their argument against a *per se* rule of retaliatory

discharge. Defendants argue that under *Paz*, discharging an employee for absenteeism when the employee's physician disputes the employee's ability to return to work presents a factual question for a jury on the issue of causation.

In *Paz*, on August 16, 1989, the plaintiff was an employee of Commonwealth Edison (ComEd) who was injured on the job. For two years, the employee on occasion returned to work part-time and performed light-duty tasks. The employee was paid workers' compensation benefits and medical expenses. The employee and ComEd eventually settled on total workers' compensation benefits of $115,000, which was approved by the Commission. *Paz*, 314 Ill. App. 3d at 593. During this period, the employee was examined by several doctors, including his personal physician and a doctor employed by ComEd. These doctors disputed the employee's ability to work. On November 7, 1991, the employee was examined by a doctor employed by ComEd and the parties disputed whether that doctor at that time released the employee to work full-time. The employee did not report to work on November 7, 1991, and the employee was terminated that day. *Paz*, 314 Ill. App. 3d at 593. The employee filed suit alleging retaliatory discharge and the jury returned a verdict in ComEd's favor. *Paz*, 314 Ill. App. 3d at 593-94.

The Second District of this court held that the jury's determination that the employee's discharge was not causally related to his exercise of rights under the Act was not against the manifest weight of the evidence. *Paz*, 314 Ill. App. 3d at 594-95. The *Paz* majority opinion noted that the employee was discharged more than two years after he was injured and began receiving benefits under the Act; he had not reported to work for approximately five months at the time of his firing; and he did not report to work on November 7, 1991, the date on which ComEd discharged him after determining that he could not or would not do full-time work. *Paz*, 314 Ill. App. 3d at 595. The *Paz* majority explained that ComEd only had eight-hour-a-day restricted-duty work available and the employee refused to work eight hours a day. *Paz*, 314 Ill. App. 3d at 595.

In upholding the jury's verdict, the *Paz* majority rejected the employee's and dissent's reliance on *Clark*, 297 Ill. App. 3d 694. The *Paz* majority stated:

> "Plaintiff and the dissent would have this court take the *Clark* holding that an employee may not be discharged 'on the basis of a dispute about the extent or duration of a compensable injury' (*Clark*, 297 Ill. App. 3d at 699) to mean that any time an employee is unable to return to work or refused to return because his personal physician advises against it the employer cannot do

anything about it, as this would involve a dispute about the extent or duration of the employee's injury. This is not the law, and we will not make it so. Plaintiff and the dissent attempt to take a factual issue (the dispute over plaintiff's ability to work eight-hour days) and turn it into a question of law inuring to the benefit of the plaintiff. The evidence against the employer in *Clark* was *un*disputed. Such is not the case here. To that extent, *Clark* is inapplicable and distinguishable." (Emphasis in original.) *Paz*, 314 Ill. App. 3d at 596.

The *Paz* majority explained that the appellate court in *Clark* found as undisputed the fact that the employee was discharged because the employer believed that her claim for benefits was exaggerated; whereas, in *Paz*, the dispute over the employee's ability to return to full-time employment was just one fact to be considered by the fact finder. *Paz*, 314 Ill. App. 3d at 595-96. The *Paz* majority concluded that "[w]hether the plaintiff's discharge was retaliation for exercising his rights under the Act or whether the discharge was ComEd's lawful termination of an employee unable to fulfill his duties is a question of fact to be decided after viewing *all* the evidence." *Paz*, 314 Ill. App. 3d at 596.

As in *Paz*, defendants in this case disputed plaintiffs' allegations that their discharge was in retaliation for filing their workers' compensation claims. The present case is distinguishable from *Clark*, where the employer admitted that the employee's discharge was connected to her workers' compensation claim because the employer thought that the employee was malingering (*Clark*, 297 Ill. App. 3d at 698), and *Hollowell*, where the appellate court determined that the evidence supported the jury's punitive damages award in that case. *Hollowell*, 318 Ill. App. 3d at 989. Here, it appears that the circuit court went beyond these cases and applied a *per se* rule of retaliatory discharge rather than examining whether defendants relied solely on the IME opinions to terminate plaintiffs or whether defendants had a valid, nonpretextual basis for discharging plaintiffs. As our supreme court has explained, "[t]he burden remains on the plaintiff to establish the elements of his cause of action," which here involved the claim that defendants wrongfully discharged plaintiffs in retaliation for seeking recovery under the Act. See *Clemons*, 184 Ill. 2d at 336-37.

In determining whether a plaintiff has established the element of causation for retaliatory discharge, this court has explained "[t]hat an employer may discharge an employee at will for any reason or for no reason 'is still the law in Illinois, except when the discharge violates a clearly mandated public policy.' " *Marin v. American Meat Packing Co.*, 204 Ill. App. 3d 302, 308 (1990), quoting *Barr v. Kelso-Burnett*

*Co.*, 106 Ill. 2d 520, 525 (1985). In *Marin*, this court held that the verdict in favor of an employee on his retaliatory discharge claim was against the manifest weight of the evidence, thereby entitling the employer to a new trial. In *Marin*, this court determined that, contrary to the employee's claim, there was evidence that the employer attempted to restore the employee to active employment after his injury where the employer provided the employee with an extra 10 days to return to work after notice from the employee's doctor that he could return to work. *Marin*, 204 Ill. App. 3d at 308. This court also noted that the employer ultimately terminated the employee for absenteeism and there was no evidence that the supervisor responsible for firing the employee knew of the employee's workers' compensation claim. *Marin*, 204 Ill. App. 3d at 308. Accordingly, this court explained that "[t]he causality element, therefore, requires more than a discharge in connection with filing a claim." *Marin*, 204 Ill. App. 3d at 308.

In *Finnerty v. Personnel Board of the City of Chicago*, 303 Ill. App. 3d 1 (1999), this court discussed the role of the Commission with respect to the review of the city personnel board's decision to discharge the plaintiff-employee for violating the city's personnel rules. This court explained that it is the role of the Commission to decide whether the former city employee was injured, whether the injury was work-related, the extent of the injury and whether any disability was involved. *Finnerty*, 303 Ill. App. 3d at 6. However, this court determined that the city's personnel board was the proper forum to determine whether the employee should have been discharged for violating the city's personnel rules by his excessive absenteeism and failure to call in advance when he was going to be absent from work. *Finnerty*, 303 Ill. App. 3d at 6. This court rejected the employee's argument that the mere filing of a workers' compensation claim operated as a stay of any administrative proceeding regarding his discharge until the resolution of the workers' compensation claim. *Finnerty*, 303 Ill. App. 3d at 7. In doing so, this court noted that there is no such provision in the Act and the plaintiff failed to cite case law in support of this contention. This court explained that "plaintiff's pending workers' compensation claim did not shield him from having to comply with the City's personnel rules" regarding employee absenteeism. *Finnerty*, 303 Ill. App. 3d at 8. "It is well settled in Illinois that an employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by a compensable injury." *Finnerty*, 303 Ill. App. 3d at 8. This court concluded that "just as an employer may fire an at-will employee for excessive absenteeism, *** so too can an employer terminate a contractual employee for being absent without leave, when the employment agreement, as here, specifically states

that just cause for termination includes such absenteeism." *Finnerty*, 303 Ill. App. 3d at 8.

In *Siekierka v. United Steel Deck, Inc.*, 373 Ill. App. 3d 214 (2007), this court determined that summary judgment in the employer's favor was not appropriate where a genuine issue of material fact existed as to any causal connection between the employee's termination and the filing of his workers' compensation claim. This court noted that "[t]he ultimate issue concerning the element of causation is the employer's motive in discharging the employee." *Siekierka*, 373 Ill. App. 3d at 221. This court explained that the element of causation is not met if the employer has a " 'valid basis, which is not pretextual, for discharging the employee.' " *Siekierka*, 373 Ill. App. 3d at 222, quoting *Hartlein*, 151 Ill. 2d at 160. For example, "an employer may terminate an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury." *Siekierka*, 373 Ill. App. 3d at 222. However, the mere existence of a valid or sufficient reason does not defeat a retaliatory discharge claim. *Siekierka*, 373 Ill. App. 3d at 222. Furthermore, "despite an ostensibly neutral absenteeism policy, where the actual purpose and effect of the scheme penalize employees for filing workers' compensation claims, the employer's action may in fact be retaliatory." *Siekierka*, 373 Ill. App. 3d at 222.

In *Siekierka*, this court noted that the employer chose to come forward with a valid nonpretextual basis for terminating the employee, namely, his failure to return from authorized leave. However, there was also evidence to support an inference that the employer's insurer set in motion a process, by refusing to accommodate the employee's surgery, that made it impossible for the employee to return to work within the time granted to him by the employer. *Siekierka*, 373 Ill. App. 3d at 222. This court therefore concluded that there was a genuine issue of material fact as to whether there exists a causal nexus between the employee's discharge and the exercise of his rights under the Act. *Siekierka*, 373 Ill. App. 3d at 223.

■ In the present case, it appears that the circuit court applied a *per se* rule of retaliatory discharge instead of considering whether there was a genuine issue of material fact as to the element of causation that would preclude summary judgment. While it would be improper for defendants to change plaintiffs' attendance coding and then discharge plaintiffs solely based on the IME opinions where it is the role of the Commission to determine the extent of plaintiffs' injuries, we decline to apply a *per se* rule of retaliatory discharge. Rather, cases brought for retaliatory discharge predicated on an employee's filing of a workers' compensation claim are reviewed using

traditional tort analysis. See *Clemons*, 184 Ill. 2d at 339. It therefore remains the plaintiffs' burden to establish the elements of their cause of action, which involved the claim that defendants wrongfully discharged plaintiffs in retaliation for exercising a right or remedy granted to them under the Act.

Certified question answered.

MURPHY, P.J., and THEIS, J., concur.